UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
BRIAN K. HILL and
YVONETTE A. HILL,
    Debtors

Case No. 1-03-01604

BRIAN K. HILL and
YVONETTE A. HILL,
    Plaintiffs

CHAPTER 13

v.

Adv. No. 1-03-00329A

TAMMAC CORPORATION,
    Defendant

## OPINION

### Procedural History

Brian and Yvonette Hill ("Debtors") filed the instant adversary case under Pennsylvania usury laws against Tammac Corporation ("Tammac"), which holds a note secured by a lien on Debtors' manufactured home. Debtors seek as damages a refund of interest charges paid in excess of the amount allowable under 41 P.S. §301 et seq. Pursuant to 41 P.S. §502, damages may be awarded in an amount three times greater than the actual amount of excessive interest. Tammac responds by asserting that as to the instant note, state usury laws are preempted by federal law.

This matter is non-core and was heard pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033. Debtors consented to the entry of judgment by the Bankruptcy Court but Tammac did not expressly consent. Therefore, this Court is without jurisdiction to enter final judgment in this matter and prepares the following

1

OCT 2 6 2004

proposed findings of fact and conclusions of law for submission to the District Court for final judgment in this matter. *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 196 (3rd Cir. 1999).

**Proposed Findings of Fact**

1. On October 21, 1999 Debtors executed a note originating a loan in which Debtors agreed to pay $36,797.50 to Tammac over 25 years at a rate of 15% interest ("Debtors' Note").

2. On the date Debtors' Note was executed Pennsylvania law provided that the maximum rate of interest payable on a residential mortgage was 8.75%.

3. The proceeds of Debtors' Note were used to purchase their residence, a manufactured home located in Shippensburg, Pennsylvania.

4. Tammac is a Pennsylvania corporation, and Debtors' Note states that its terms are to be governed by the laws of Pennsylvania.

5. In calendar year 1999, Tammac made loans for the purchase of manufactured homes, the real estate on which they would be situated, or both, in the aggregate amount of $87,646,432.43.

6. In fiscal year 2003, Tammac made loans exclusively for the purchase of real estate in the amount of $38,740,712.30. It made loans exclusively for the purchase of manufactured homes in the amount of $84,684,926.82.

7. No evidence was presented regarding the dollar amount of loans made by Tammac in 1999 which included the financing for the acquisition of real estate.

2

Case 1:03-ap-00329-MDF    Doc 10    Filed 10/26/04    Entered 10/29/04 14:54:46    Desc

## Proposed Conclusions of Law and Discussion

The dispute before the Court centers on whether or not provisions of the Federal Depository Institution Deregulation and Monetary Control Act of 1980, 12 U.S.C.A. §1735f-7a ("DIDA"), the National Housing Act, 12 U.S.C.A. §1735f-5(b) ("NHA"), and the Truth in Lending Simplification and Reform Act, as amended, 15 U.S.C.A. §1602(f), preempted state usury laws in regard to the Tammac loan. Read together, these statutes describe the lenders and loans that are not subject to state usury laws.

In order to determine whether the loan Tammac made to Debtors is governed by state usury laws, the court must first examine the relevant provisions of DIDA. Section 1735f-7a provides that:

> The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is–
>
> > **(A)** secured by a first lien on residential real property, by a first lien on all stock allocated to a dwelling unit in a residential cooperative housing corporation, or by a first lien on a residential manufactured home;
> > **(B)** made after March 31, 1980; and
> > **(C)** described in section 527(b) of the National Housing Act (12 U.S.C. 1735f-5(b)),

12 U.S.C.A. §1735f-7a.

It is uncontroverted that the instant loan is secured by a first lien on residential real property and that it was made after March 31, 1980. The issue is whether it is the type of loan described in Section 527(b) of the NHA. Section 527(b) of the NHA provides, in pertinent part:

> The term "federally related mortgage loan" means any loan which--

3

> **(1)** is secured by residential real property designed principally for the occupancy of from one to four families; and
>
> **(D)** is made in whole or in part by any "creditor", as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.

12 U.S.C.A. §1735f-5.

The parties in this case agree that the instant loan would fall within the definition of a "federally related mortgage loan" under the NHA if Tammac is a "creditor" as defined in 15 U.S.C.A. §1602(f). Under title 15

> [t]he term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C.A. §1602(f).

It is somewhat difficult to fuse these definitions into a succinct, clear description of the situation in which preemption applies. Since certain elements of each definition are clear from the record or agreed to by the parties, only the disputed elements are discussed. Thus, for Tammac to be exempt from state usury laws under DIDA, the instant loan must be one covered by Section 527 of the NHA. To be covered by Section 527 of the NHA, the loan must have been made by a "creditor" as defined in 15 U.S.C. §1602(f) who makes or invests in residential real estate loans aggregating over $1 million per year. To be a creditor under Section 1602(f), Tammac must be the person to whom the debt is initially payable on the face of the evidence of indebtedness.

4

Debtors assert that Tammac does not enjoy the exemption from the application of state usury laws provided under DIDA because Tammac did not provide evidence that it is the original lender for residential mortgage loans totaling at least $1 million. Debtors assert that Tammac's evidence that it made residential real estate loans in the amount of $38,740,712.30 in 2003 does not qualify the lender for preemption under 15 U.S.C.A. §1602(f) because many of the residential real estate mortgages held by Tammac were purchased by Tammac from other lenders.

Debtors' argument incorrectly interprets the interplay of the statutes quoted above, and particularly the interplay between Section 1602(f) and the NHA. The NHA does not require that a lender must have been the original lender on loans totaling at least $1 million or more to be exempt from the requirements of state usury laws. Rather, it only requires that the lender have been the original lender *for the loan at issue*, and that the lender "make or invest in" residential real estate loans aggregating more than $1million per year. See Lifset and Sheingold, *The Law of DIDA Section 501*, 54 Consumer Fin. L.Q. Rep. 122 (Spring, 2000).[1] The NHA includes creditors that originate or invest in residential housing loans. See, *In re Johns*, 1990 WL 61765 at *4 (Bankr. E.D. Pa. 1990). There is no dispute that *with regard to Debtors' loan* Tammac is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." The flaw in Debtors' argument is evident upon examination

---

[1] Section 501 preempts state usury laws when a loan is "made by a creditor who regularly extends or arranges for the extension of credit payable in more than four installments or for which a finance charge is required if the creditor makes or invests in residential real property loans aggregating more than $1,000,000.00 per year."

5

of 15 U.S.C. § 1602(f), which acknowledges that there may be no evidence of indebtedness in a particular case, suggesting acquisition of a loan through assignment.

At the hearing on this matter, Tammac presented the testimony of Jeffrey Goodrich, an employee in its "collections and legal accounts" department. As a custodian of records, he testified about Tammac's lending volumes over several time periods. He stated that in Tammac's 2003 fiscal year, which extended from April 1, 2003 to March 31, 2004, the company made loans totaling $123,425,639.12, of which $38,740,712.30 were "real estate loans." The remainder of the loans were "non-real estate," which Goodrich defined as loans for manufactured homes on lots previously acquired by the purchaser or rented in mobile home parks. Goodrich further testified that in 1999, the calendar year in which the instant loan was originated, Tammac made loans totaling $87,646,432.43. Goodrich was unable to testify about the amount of real estate loans that were included in this total.

The NHA clearly provides that for a lender to fall within its parameters, the lender must have made loans *for the purchase of real estate* totaling more than $1 million. Having failed to provide a breakdown of its 1999 loans, Tammac was unable to provide evidence that its loans met the criterion of the NHA[2] While one might assume from a comparison of the amount of loans extended for fiscal year 2003 and for the calendar year 1999 that over $1 million in real estate loans were made in 1999, the Court cannot find as

---

2

Tammac does not argue and the statute contains no indication that any calendar year will satisfy the requirements of the NHA. The Court's independent research revealed no cases or legislative history to indicate that it should look to any year other than the year in which the loan at issue was made.

6

Case 1:03-ap-00329-MDF    Doc 10    Filed 10/26/04    Entered 10/29/04 14:54:46    Desc

a fact that the required number of real estate loans were made. The record as it exists does not rule out the possibility that Tammac only began to make real estate loans at some point after 1999. Therefore, Tammac has failed to demonstrate that it is not subject to state usury laws.

Federal preemption of state usury laws was the sole defense presented by Tammac in this case. Such defense having failed, and it being clear from the evidence that the interest rate charged by Tammac exceeded the rate allowed by state law, the Court can only conclude that Debtors are entitled to judgment. Pennsylvania law provides that a person who has paid a rate of interest in excess of that provided for by state law may recover triple the amount of such excess interest. 41 Pa C.S. § 502. Tammac has not argued that treble damages are not warranted. Therefore, the Court concludes that Debtors are entitled to an award of $19,154.40, the amount they requested in their complaint.

The Clerk is directed to docket the within findings of fact and conclusions of law and serve copies on the Debtors and Tammac as required under Federal Rule of Bankruptcy Procedure 9033(a).

BY THE COURT

Date: October 26, 2004

*[signature]*
Bankruptcy Judge

*This electronic order is signed and filed on the same date.*

7